1   NEWPORT TRIAL GROUP
2   A Professional Corporation
    Scott J. Ferrell, Bar No. 202091
3   James B. Hardin, Bar No. 205071
4   610 Newport Center Drive, Suite 700
    Newport Beach, CA  92660
5   Tel: (949) 706-6464
6   Fax: (949) 706-6469

7   Attorneys for Plaintiffs and the Class

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11

12  FELIPE MORALES, DAN BOBBA, and          Case No.  CV10 1601 EDL
13  CHRIS RHODES, individually, and on
    behalf of all others similarly situated,  **PLAINTIFFS' OPPOSITION TO**
14                                            **DEFENDANTS' MOTION FOR**
15            Plaintiff,                      **SANCTIONS**

16            vs.                             DATE:          October 12, 2010
                                              TIME:          2:00 p.m.
17  MAGNA, INC.; STEVE MOIDEL; and           CRTRM:          E
18  DOES 1-250, Inclusive,
19                                            [Filed Concurrently with Declarations of
            Defendants.                       Scott J. Ferrell and Wynn Ferrell in
20                                            Support Thereof]
21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION………………………………………………………1

II.     RELEVANT FACTUAL BACKGROUND………………………………4

     A.      Before Filing Suit Against Defendants, Plaintiffs'
           Counsel Offered To "Take No Further Action" If
           Defendants Agreed To Cease All False Advertising…………………..4

     B.      Defense Counsel Tried To Avoid This Issue And
           Blame Unnamed "Third-Party Resellers" For
           The False Advertising Of *Their Own Product*………………………... 5

     C.      Counsel Reasonably Decided To Pursue The
           Indicated Lawsuit In California State Court – Based
           On *California Law And On Behalf Of A California
           Class* – To Conduct Civil Discovery And To Try
           To Stop The False Advertising………………………………………...6

     D.      In December 2009, Plaintiffs' Counsel Sought To
           Expedite The Vaughn Case By Scheduling And
           Completing The Depositions Of Defense
           Witnesses And Vaughn……………………………………………….7

     E.      In His April 2010 Deposition, Defendant
           Moidel Made Various Admissions Which
           Directly Contradicted Defendants' Claims Regarding
           The MagnaRx Product…………………………………………………7

     F.      Before Filing This Action, Plaintiffs' Counsel Again
           Urged Defendants To Consider Settlement……………………………8

     G.      Before And Soon After Filing This Action, Plaintiffs'
           Counsel Repeatedly Asked Defendants To Consolidate
           The Two Lawsuits – But Defendants Refused These Requests………..8

H.    The Transcript Of The June 22, 2010 Hearing Of
      Defendants' Motion To Dismiss/Transfer Venue
      Further Attests To The Candor And Good Faith
      Of Plaintiffs' Counsel, While Raising Questions
      Regarding Defendants' Conduct……………………………………11

I.    Defendants' Assertion That Scott Ferrell's June 1, 2010
      Declaration False Is Baseless………………………………………15

J.    Defendants' Assertion Plaintiffs' Counsel Did Not
      Timely Disclose The Loss Of Contact With
      Plaintiff Morales Is False…………………………………………15

K.    On July 8, 2010, Plaintiffs' Counsel Timely Withdrew
      Their Motion For Preliminary Injunction……………………………... 15

L.    Defendants' Most Inflammatory Assertion – That
      Plaintiffs' Counsel Improperly Offered
      Compensation To Class Representative Bobba and
      Knowingly Asserted False Allegations In The First
      Amended Complaint – Is Completely And Totally False……………...16

M.    Defendants' Contention That Plaintiffs' Counsel Was
      Unwilling To Put Messrs. Bobba And Rhodes Up For
      Deposition, And Ultimately Dismissed The Case, To
      Try To Protect This Supposed Improper Compensation
      Ring Exposed Is Absurd……………………………………………… 17

N.    On August 23, 2010, In An Effort To Avoid Further
      Expenditure Of Resources, Plaintiffs' Counsel
      Dismissed This Action Without Prejudice Due To
      Ongoing Issues With Class Representatives……………………………17

III.  THE STANDARD FOR SANCTIONS UNDER
      SECTION 1927 IS DELIBERATELY HIGH……………………………….. 18

IV.   THE ACTUAL CONDUCT OF PLAINTIFFS' COUNSEL
      CANNOT GIVE RISE TO SECTION 1927 SANCTIONS
      BECAUSE IT WAS BOTH REASONABLE AND NON-VEXATIOUS…... 19

V.    CONCLUSION……………………………………………………………..22

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

*B.K.B. v. Maui Police Department*

276 F.3d 1091, 1107 (9th Cir. 2002)……………………………………………18

*Browning v. Kramer*

931 F.2d 340, 344 (5th Cir. 1991)……………………………………………….4

*Edwards v. General Motors Corp.*

153 F.3d 242, 246 (5th Cir. 1998)…………………………………………….4, 18

*FDIC v. Conner*

20 F.3d 1376, 1384 (5th Cir. 1994)……………………………………..…..4

*In re Keegan Management Co. Securities Litigation*

78 F.3d 431, 436 (9th Cir. 1996)……………………………………………..18

*MGIC Indemnity Corp. v. Moore*

952 F.2d 1120, 1121-1122 (9th Cir. 1991)……………………………….4, 18

*NAACP-Special Contribution Fund v. Atkins*

908 F.2d 336, 340 (8th Cir. 1990)………………………………………...18

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*

210 F.3d 1112, 1118 (9th Cir. 2000)………………………………………4, 18

*Rossello-Gonzalez v. Acevedo-Vila*

483 F.3d 1 (1st Cir. 2007)……………………………………………...18

## **STATUTES**

28 U.S.C. Section 1927……………………………………………*passim*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- iii -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Although Defendants Magna, Inc. and Steve Moidel ("Defendants") did not prevail in this litigation and do not assert that Plaintiff's counsel violated any Order from this Court, they have filed a motion for fees and costs pursuant to 28 U.S.C. Section 1927 ("section 1927") against Plaintiffs' counsel ("Counsel" or "Plaintiffs' Counsel").[1]  However, Defendants' motion, filed without any effort to meet and confer (and apparently minimal fact-checking), is founded almost entirely on factual misstatements, false inferences, and dubious legal assumptions.  Once these provably false and inflammatory assertions are pared away (*see* Declarations of Scott Ferrell, Wynn Ferrell, and Dan Bobba[2] filed concurrently herewith), it is clear that Plaintiffs' Counsel has acted reasonably and in good faith and ***it is defense counsel that is overreaching***[3].   Indeed, after reviewing the more complete and evenhanded factual record presented by Plaintiffs in this Opposition, it is clear there is absolutely no basis for sanctions under the exacting standards of section 1927.

There is little doubt that this case against Defendants is strong on the merits.  Indeed, in his April 2010 deposition, defendant Moidel admitted facts showing that many of the marketing claims regarding the MagnaRx+ product are patently false.  (*See* Scott Ferrell Decl., ¶ 8).   But for strategic reasons subject to the attorney client privilege, as indicated in the Declaration of Scott Ferrell, Counsel made certain reasonable decisions which ultimately led to the dismissal of this case without prejudice.  (S. Ferrell Decl., ¶¶ 29-30).

---

[1] Unless otherwise stated, "Plaintiffs Counsel" shall refer to Scott J. Ferrell, Esq.

[2] In his declaration signed on September 5, 2010, Dan Bobba basically acknowledges that Plaintiffs' Counsel acted appropriately and his internet postings were largely fictional and exaggerated banter.  The Bobba Declaration is attached as Exhibit A to the Declaration of Wynn Ferrell and Exhibit Q to the Declaration of Scott Ferrell.

[3] The fact that Defendants included Michael Velarde as a target of their motion indicates the shotgun approach they have employed.   Aside from the fact that he acted appropriately throughout this case, Mr. Velarde is a first-year associate fresh out of law school who never had any contact with the Plaintiffs in this case.   At all times he candidly conveyed to the court the (truthful) information provided to him by his supervisors.

There are several basic reasons why Defendants motion should be denied. First, it is founded almost entirely on factual assertions that are false or at best very misleading – the falsity of which actually raise questions about the good faith of Defendants' positions herein. Defendants have it backwards. In their haste to inflict harm on Plaintiffs' Counsel, it is they who have misstated facts, misconstrued disputes, and argued invalid positions.

       1)      **Defendants claim Plaintiffs' Counsel "unreasonably and vexatiously multiplied the proceedings before this Court**" -- Yet it was Plaintiffs' Counsel's who reasonably offered to settle before filing suit, while defense counsel essentially rebuffed this offer with obfuscation and efforts to blame others; it was Plaintiffs' Counsel who offered in writing ***at least three times*** to consolidate this case with the California State Court action ("Vaughn case"), while defense counsel consistently refused and insisted on motion practice to challenge the venue in this action[4]; it was Plaintiffs' Counsel who candidly informed the Court at the June 22, 2010 hearing that it had lost contact with plaintiff Morales and truthfully advocated for a simple solution (i.e., give them two weeks to identify new plaintiffs and amend), while defense counsel advocated for the more inefficient option rejected by this Court as such[5]; and finally it was

---

[4] At set forth in the Declaration of Scott Ferrell, on April 7, 2010, May 19, 2010, and May 24, 2010, Scott Ferrell offered and urged defense counsel to agree to coordinate the two actions before either this Court or the California State Court hearing the Vaughn matter, and left the choice up to defense counsel. Defense counsel repeatedly rejected these offers. (Scott Ferrell Decl., ¶¶ 9-15)

[5] At the June 22, 2010 hearing on Defendants' Motion to Dismiss/Transfer Venue, the Court rejected defense counsel Joseph Schenk's request for dismissal or transfer, finding that a less efficient course:

> **Mr. Schenk**: . . . I submit that the remedy in this case should be to dismiss without prejudice rather than transfer. Because if Mr. Morales ever reappears, he is already potentially protected because the state court case is a class – a purported class action on behalf of all California purchasers of this product.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

Plaintiffs' Counsel who reasonably chose to dismiss this case without prejudice on August 23, 2010 due to repeated issues with class representatives, while defense counsel now (somehow ironically) seeks to punish Plaintiffs' Counsel for reasonably ending the case and avoiding the further expenditure of time and resources.

2) **Defendants claim Plaintiffs' Counsel was not candid with the Court** -- Yet it was Plaintiffs' Counsel who candidly informed the Court on June 22, 2010 that it had lost contact with plaintiff Morales and truthfully noted they had been in contact with two other potential plaintiffs, while defense counsel now tries to re-argue a position this Court already rejected at the June 22 hearing – i.e., that his lawsuit is essentially duplicative of the Vaughn action – as a supposed basis for sanctioning Plaintiffs' Counsel; and it is defense counsel who, in their effort to paint a negative portrait of Plaintiffs' counsel, has misleadingly failed to inform the Court of Plaintiffs' Counsel's repeated efforts to settle this case, consolidate the two lawsuits, and streamline this litigation.

(3) **Defendants claim Plaintiffs' Counsel has acted maliciously and punitively** – Yet it is defense counsel who made very serious – and false – allegations of misconduct against Plaintiffs' Counsel based on a

. . .

**The Court**:   Right.   But my point is, then, that will be a related case to me and we'll just be back here in a few weeks anyway.   If they don't amend, if I give a two-week deadline, than there's no satisfactory amendment, then the case will be over.   So, I think that's probably the simpler thing to do.   So I will – I'm going to, I guess, grant leave to amend, two weeks, to have a complaint that properly states a basis for venue here. And that may include adding plaintiffs.   It can include deleting this plaintiff.   But if that isn't done in a satisfactory way, then I will dismiss the case.

(June 22, 2010 Hearing Transcript, Ex. O to Scott Ferrell Decl.)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

few farfetched and false internet postings without any additional investigation or input from Plaintiffs' Counsel.

Second, there is no basis for finding Plaintiffs' Counsel liable for sanctions under Section 1927.  Section 1927 is *not* intended to inhibit zealous advocacy or punish counsel for events outside of their control (such as client unavailability).  Indeed, because of its penal nature Section 1927 is strictly construed "so that the legitimate zeal of an attorney in representing her client is not dampened." (*FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994) (quoting *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991).)  What is more, with the adverbs being in the conjunctive, sanctions under Section 1927 must be imposed for conduct that is *both* "unreasonable" *and* "vexatious" with a showing of "bad faith, improper motive, or reckless disregard of the duty owed to the court." (*Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).) In the Ninth Circuit, the imposition of Section 1927 sanctions requires a finding of bad faith: "We assess an attorney's bad faith under a *subjective standard.  Knowing or reckless conduct* meets this standard." (*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (quoting *MGIC Indemnity Corp. v. Moore*, 952 F.2d 1120, 1121-1122 (9th Cir. 1991) (emphasis added).)

Once Defendants' false contentions are pared away, the record shows that Plaintiffs' Counsel acted appropriately throughout this litigation and there is no basis for sanctions here.  Therefore, based upon the facts and legal authorities discussed herein, Plaintiffs' Counsel respectfully requests that Defendants' motion be denied in its entirety.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Before Filing Suit Against Defendants, Plaintiffs' Counsel Offered To "Take No Further Action" If Defendants Agreed To Cease All False Advertising.

To try to avoid unnecessary litigation, Plaintiff's counsel – before filing any lawsuit against Defendants – sent defendant Magna, Inc. a letter notifying them of his

- 4 -

client's claims for false advertising.  The letter stated unequivocally that if Magna, Inc. agreed to cease all false advertising and make an appropriate disclaimer Counsel would "take no further action."  Specifically, in his November 9, 2009 letter to Magna, Inc., Plaintiff's counsel stated in pertinent part:

### V.   Offer of Compromise

> If Defendants agree to a stipulated injunction that includes an appropriate labeling disclaimer within thirty days from the date of this letter, we will agree to take no further action in this matter nor make any further claim for relief unrelated to the terms of the stipulated injunction.
>
> . . .

(Ex. A to S. Ferrell Decl.)

**B.    Defense Counsel Tried To Avoid This Issue And Blame Unnamed "Third-Party Resellers" For The False Advertising Of *Their Own Product.***

In response, rather than agree to Counsel's offer or at least engage in constructive discussions directed at stopping the false advertising of its product, defense counsel (Joseph Schenk, Esq.) vaguely indicated that the false advertising may be either "from its own old advertisement for the product that has been discontinued" or "generated by a third-party reseller of MagnaRx+."  (Ex. B to Ferrell Decl.)  Defense counsel did not offer to find out the origin of these false claims, nor did he identify any supposed "third-party resellers" who may be responsible.  He merely averred, without substantiation, that "Magna-RX, Inc. has safeguards in place that are designed to prevent third-party resellers from making false or misleading claims regarding its trademarked product."  (S. Ferrell Decl., ¶ 3).

///

///

///

- 5 -

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

C. **Counsel Reasonably Decided To Pursue The Indicated Lawsuit In California State Court – Based On *California Law And On Behalf Of A California Class* – To Conduct Civil Discovery And To Try To Stop The False Advertising.**

Given defense counsel's opaque response, Plaintiffs' Counsel ***reasonably determined*** that, among other things, he needed to use civil discovery procedures to obtain reliable information regarding the merits of the case and the issues raised by defense counsel, including: (1) all of the product labels and advertisements issued by the defendants – whether current or "discontinued"; (2) the identity and role of unnamed "third-party resellers" in promoting and selling MagnaRx; and (3) the corporate and contractual interrelationships between Defendants and the various unnamed "third-party resellers" and their respective roles in the promotion and sale of the MagnaRx product.  (S. Ferrell Decl., ¶ 4).

Accordingly, Counsel initially pursued a putative class action on behalf of Kevin Vaughn filed in California state court, Los Angeles County.   In an initial Complaint and First Amended Complaint, Counsel alleged four causes of action based on California law (California Legal Remedies Act, Fraud, Unfair Competition, and Breach of Warranty) on behalf of a putative California Class, defined in the First Amended Complaint as follows:

> All persons located ***within California*** who purchased Magna-Rx+ for personal use at any time during the four years preceding the filing of this Complaint ("the Class").

(FAC, ¶ 42, Ex. D to Ferrell Decl.) (emphasis added).

It was significant to Plaintiffs' Counsel that defense counsel ***did not*** try to defend the veracity of any of the claims regarding the Magna-Rx+ product, but instead tried to blame unnamed third parties.  Moreover, in a subsequent letter from defense counsel (a December 3, 2009 letter from Mr. Schenk, Ex. F to S. Ferrell Decl.), defense counsel admitted that Magna, Inc. owned at least one of the key websites that had posted many

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

of the false statements.  Defense counsel's creative attempt to explain why his client's ownership of an offending website was somehow not its responsibility – i.e., that it was previously owned by another company that sold the Magna-Rx+ product but it was then purchased by defendant Magna, Inc., etc – further affirmed the reasonable belief of Plaintiffs' Counsel, based on his  own investigation and the inadequate responses and omissions of defense counsel, that litigation should be pursued against Defendants regarding the Magna-Rx+ product.  (S. Ferrell Decl., ¶ 6).

> **D.** **In December 2009, Plaintiffs' Counsel Sought To Expedite The Vaughn Case By Scheduling And Completing The Depositions Of Defense Witnesses And Vaughn.**

In December 2009, Plaintiffs' Counsel requested depositions of several defense witnesses and unilaterally offered to put Mr. Vaughn up for deposition.  Accordingly, the deposition of defendant Steve Moidel was taken on April 12, 2010 and the deposition of plaintiff Kevin Vaughn was taken on April 20, 2010.  (S. Ferrell Decl., ¶ 7).

> **E.** **In His April 2010 Deposition, Defendant Moidel Made Various Admissions Which Directly Contradicted Defendants' Claims Regarding The MagnaRx Product.**

In his deposition, defendant Steve Moidel, the CEO and person most qualified witness of defendant Magna, Inc., made various admissions indicating that he and his company have made many false and misleading claims regarding the alleged efficacy of the Magna-Rx+ product.  The table at paragraph eight (8) of the Declaration of Scott Ferrell compares the statements Defendants made on their proprietary website www.magnarx.com – then subsequently took down because of this lawsuit – with various admissions defendant Moidel made under oath in deposition.  These admissions left little doubt regarding the falsity of Defendants' product claims.

///

///

**F.     Before Filing This Action, Plaintiffs' Counsel Again Urged Defendants To Consider Settlement.**

On April 5, 2010, Plaintiffs' Counsel wrote an email to defense counsel that addressed several issues, including the upcoming deposition of Mr. Vaughn and also the possibility of settlement.  Thus, rather than seeking to multiply or prolong this litigation as claimed, Plaintiffs' Counsel again discussed an early resolution of this case, stating that *my client and I "remain interested in resolving this case without the need for lengthy litigation."*  Plaintiffs' Counsel indicated he would be amenable to resolution in which defendant Magna, Inc. agreed to make appropriate disclosures about the medical background of its alleged creator and chief sponsor (Dr. Aguilar) as well as a corporate policy requiring defendant Magna, Inc. to control the false efficacy claims of affiliate marketers – *who Magna, Inc. claimed were making most or all of the false statements regarding its product*.  Plaintiffs' Counsel I also offered to submit a claim for attorneys' fees – to the extent that he was entitled to receive any – "to the discretion of the Court or an agreed-upon arbitrator. . . ."  (Ex. J. to S. Ferrell Decl.)  That would allow Defendants to resolve the case and still argue to a court that Plaintiffs' Counsel was not entitled to any fees.  (S. Ferrell Decl., ¶ 8).

**G.     Before And Soon After Filing This Action, Plaintiffs' Counsel Repeatedly Asked Defendants To Consolidate The Two Lawsuits – But Defendants Refused These Requests.**

On or about April 7, 2010, Plaintiffs' Counsel notified Defendant that he had been retained by another client (Felipe Morales, the original plaintiff in this action) to pursue an action against Magna, Inc.  Plaintiffs' Counsel thought it was advisable to pursue a nationwide class action against Defendants under California law to seek to address their nationwide sales of the Magna-Rx+ product since the key decisions seemed to emanate from California.  (S. Ferrell Decl., ¶ 9).

However, *in an effort to avoid filing a separate lawsuit in federal court*, Plaintiffs' Counsel first asked defense counsel to stipulate to amend the Vaughn lawsuit

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

to include the nationwide class action claims of Mr. Morales.  This is confirmed in Plaintiffs' Counsel's April 7, 2010 correspondence to Defendants, in which he states in pertinent part:

> Third, I have been retained a new matter involving Magna-Rx.  Given that neither the class claims nor the defendants will not [sic] be identical in the second case, and given your opposition to amending the pending lawsuit, we will be filing a second lawsuit…."

(Ex. K to Ferrell Decl.)

Defendants declined this offer.  So on April 14, 2010, Plaintiffs' Counsel filed this lawsuit on behalf of Mr. Morales.  It alleged a ***nationwide class*** action based on, among other things, the federal RICO statute.  (S. Ferrell Decl., ¶ 10).

On or about May 12, 2010, Defendants filed a Motion to Dismiss or Transfer Venue of this action, arguing that this Court should apply the Colorado River Abstention Doctrine because, among things, this action was essentially "duplicative" of the Vaughn case and constituted improper "forum shopping."  (Defendants' Motion to Dismiss 8:22-27).  In response, in a May 19, 2010 email, Plaintiffs' Counsel ***again offered to consolidate both actions either before this Court or the California state court hearing the Vaughn matter*** – and gave Defendants the option of choosing which court would hear the proposed single action, stating:

> It is my understanding that your position is that that Vaughn and Morales cases should be before the same Court.  We do not object to this position; in fact, I believe that we proposed amending the Vaughn Complaint to add additional class representatives and assert a nationwide class earlier this year, but our request was declined. . . .
>
> With the preceding items in mind, we propose as follows:

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

1. We will file a consolidated complaint asserting all of the preceding claims in either the Vaughn Court or the Morales Court, whichever one you select; . . .

(Ex. L to S. Ferrell Decl.)   In that same May 19 correspondence, Plaintiffs' Counsel also offered to: (a) bring the motion for preliminary injunction I had planned to file "on a mutually-agreeable date"; (b) file a motion for class certification "by no later than August 30th, 2010, and (c) "jointly request a proposed trial date in early 2011." *In short, Plaintiffs' Counsel offered to consolidate the cases before a single court of defense counsel's choosing, streamline the motion process (i.e. one motion for preliminary injunction), and move the case(s) along toward a quick resolution (i.e., early motion for class certification and early trial date)* – the exact opposite of what Defendants now accuse him of (e.g., multiplying the proceedings, prolonging the case, and increasing the expenses of this proceeding unnecessarily).

*Again, Defendants rejected Plaintiffs' offer to coordinate both cases,* essentially choosing to have two separate lawsuits and proceed with their motions to dismiss/transfer venue.  Still undeterred, on May 24, 2010 Plaintiffs' Counsel sent defense counsel another email reminding them of the offer to consolidate the cases, stating in pertinent part:

We respectfully request that you reconsider our offer to consolidate the two cases, as that offer will be withdrawn as of noon tomorrow (May 25th, 2010), when we begin working in earnest on the Oppositions to the referenced motions [to transfer venue].

(Ex. N to S. Ferrell Decl.)

*Again, Defendants rejected Plaintiffs' urging to consolidate the two cases.* Given that Plaintiffs' Counsel offered in writing *at least three times* to consolidate the two actions before a single court of Defendants' choosing, Defendants' argument that Plaintiffs' Counsel "unreasonably and vexatiously multiplied the proceedings before this Court" is absurd.  Plaintiffs' Counsel's repeated offers to resolve the case or at least consolidate the two lawsuits were repeatedly rebuffed by Defendants.   It was Defendants' strident refusal to accept the reasonable offers made by Plaintiffs' Counsel to consolidate that caused the filing of this action, the motion to transfer venue, and all other related matters occurring in this action.  They have only themselves to blame.

**H.     The Transcript Of The June 22, 2010 Hearing Of Defendants' Motion To Dismiss/Transfer Venue Further Attests To The Candor And Good Faith Of Plaintiffs' Counsel, While Raising Questions Regarding Defendants' Conduct.**

On June 22, 2010, the Court heard Defendants' motion to dismiss/transfer venue. (June 22, 2010 Hearing Transcript, Ex. O to S. Ferrell Decl.)   The transcript of this hearing further *demonstrates the good faith and reasonable nature of the conduct of Plaintiffs' Counsel.*

The Court rejected several of Defendants' substantive arguments in a manner that actually affirmed positions taken by Plaintiff.   First, this Court found that the Colorado River Abstention Doctrine *should not* apply and thus rejected Defendants' argument in the motion – which they have re-asserted in this motion for sanctions – that this Morales action was essentially "duplicative" of the Vaughn case and constituted improper "forum shopping."   (Defendants' Motion to Dismiss 8:22-27).  Specifically, the Court found the two cases were not duplicates:

           **The Court**:   Well, the problem I have with the Colorado River Abstention Doctrine, as the pleadings stand

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

1    right now, is that there is a RICO claim here and there isn't in

2    the state court action.

3          So I think the Colorado River Doctrine is applied very

4    sparingly.  And it's not – since there is no RICO action in that

5    case, it would seem that it can't resolve that part of this case.

6          And, therefore, it doesn't apply as things stand right now. . . .

7    (June 22, 2010 Transcript 5:9-17, Ex. O to S. Ferrell Decl.)

8          Accordingly, Defendants' effort to **_re-argue the same invalid position as a_**

9    **_supposed basis for sanctioning Plaintiff's counsel_** in this motion is groundless and in

10   bad faith.[6]

11         This Court also directly rejected other arguments made by Defendants, including

12   the lack of standing argument ("I didn't find that very persuasive," June 22 Transcript

13   5:9-17, Ex. O to S. Ferrell Decl.), and the "prior settlement"-argument (Court found it

14   premature, June 22 Transcript 10:11-21, Ex. O to S. Ferrell Decl.).  The only argument

15   from Defendants that this Court found persuasive was the foundational objection to the

16   declaration of Scott Ferrell.

17         On this point, the conduct of Plaintiffs' Counsel (first-year associate Michael

18   Velarde) was candid and appropriate.  In response to the Court's initial view that the

19   declaration of Scott Ferrell lacked foundation, Mr. Velarde correctly noted that the

20   office of Plaintiffs' Counsel had been contacted by two additional consumers that we

21   intended to add as plaintiffs to an amended pleading.  (June 22 Transcript 3:14-18, Ex.

22

23

24   [6] On page one, lines 26-27 of their Motion for Sanctions, Defendants argue that one of
     the primary basis for sanctions against Plaintiff's Counsel is that he "[f]iled this
25   purported class action lawsuit on behalf of former Plaintiff Felipe Morales ("Morales"),
     even though **_the claims are essentially the same_** as those previously asserted by
26   Plaintiffs' counsel in a class action lawsuit filed in a California State Court and even
     though Morales, as a California resident, would have been a member of the putative
27   class alleged in the State Court litigation." (emphasis added).

28

O to Ferrell Decl.; W. Ferrell Decl., ¶ 7)[7]  This Court then found, as suggested by Mr. Velarde, that it would *much more efficient* for the Court to allow Plaintiff' leave to amend than completely dismiss the case:

> **Mr. Velarde**: . . . We believe that it would be more efficient to give us the opportunity to amend rather than dismiss or transferring . . . .
>
> **The Court**: Well, I mean, the problem from the court system, if I transfer it to the Central District and then you actually do file a new claim, here we have two different federal court suits and a state court suit.  That doesn't seem like [sic.] positive development.
>
> . . .
>
> **The Court**:  Right.  But my point is, then, that will be a related case to me and we'll just be back here in a few weeks anyway.  If they don't amend, if I give a two-week deadline, then there's no satisfactory amendment, then the case will be over.  So, I think that's probably the simpler thing to do.
>
> So I will – I'm going to, I guess, grant leave to amend, two weeks, to have a complaint that properly states a basis for venue here.  And that may include adding plaintiffs.  It can

---

[7] Defendants falsely assert in their motion that Plaintiffs' Counsel "[f]alsely represented to the Court that they had *been retained* by two new clients who had purchased Magna-Rx+ when, in fact, they were actually just soliciting individuals to agree to serve as class representatives."  Motion for Sanctions 2:22-23 (para 8) (emphasis added).  In truth, Plaintiffs' counsel correctly informed the Court at the June 22 hearing that Plaintiffs' counsel "*had been contacted* by two additional plaintiffs that we intend to add as named plaintiffs in a First Amended Complaint."  (June 22 Transcript, Ex. O to S. Ferrell Decl.) (emphasis added).  As set forth in the concurrently filed declaration of Wynn Ferrell, that was, and is, an absolutely true statement.  (W. Ferrell Decl., ¶ 7).  It is Defendants who have mischaracterized the record.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

include deleting this plaintiff.  But if that isn't done in a satisfactory way, then I will dismiss the case.

(June 22 Transcript 11:5-12:14, Ex. O to S. Ferrell Decl.).

When this Court asked Plaintiffs' Counsel why he didn't obtain a declaration from Mr. Morales, Mr. Velarde candidly responded that Counsel had lost contact with him:

> **The Court**:  . . . Why didn't you get a declaration from him that he purchased them in this District?
>
> **Mr. Velarde**:  He's out of the country at this time.
>
> **The Court**:  Until when?
>
> **Mr. Velarde**:  I'm not sure.
>
> **The Court**:  So you've lost track of your plaintiff?
>
> **Mr. Velarde**:  He is very mobile.  I personally have not been able to get in contact with him recently.  I can't speak for when he is going to be back.  I know that he's traveling.  But we were not able to get a declaration from him personally on that issue.

(June 22 Transcript 9:2-12, Ex. O to S. Ferrell Decl.).  The Court then aptly noted that Mr. Morales was "A.W.O.L."  (June 22 Transcript 10:23-24, Ex. O to S. Ferrell Decl.). Thus, rather than being somehow bamboozled by a supposed misrepresentation by Plaintiff's Counsel, the transcript from the June 22 hearing establishes the exact opposite occurred: (1) Plaintiffs' counsel candidly informed the Court that they had lost contact with Mr. Velarde and he was essentially AWOL; and (2) this Court found, based on its own clear and logical reasoning, that it would be more efficient to allow Plaintiffs two weeks to try to amend the complaint by adding plaintiffs rather than dismiss the case as Defendants requested.

I.      **Defendants' Assertion That Scott Ferrell's June 1, 2010 Declaration False Is Baseless.**

Defendants' claim Scott Ferrell's June 1, 2010 declaration is false or misleading is specious.  As set forth in the Declarations of Scott and Wynn Ferrell, by indicating that he had "confirmed" Mr. Morales' February 2010 purchase of the Magna-Rx+ product in San Francisco, Scott Ferrell had intended only to indicate that he had obtained this information from his firm internally.  Scott Ferrell admits he never spoke or met with Mr. Morales.  (S. Ferrell Decl., ¶ 23; W. Ferrell Decl., ¶ 6).

J.      **Defendants' Assertion Plaintiffs' Counsel Did Not Timely Disclose The Loss Of Contact With Plaintiff Morales Is False.**

Defendants' claim that Plaintiffs' Counsel did not "timely disclose to Defendants or the Court that [he] had lost contact with Morales" is simply wrong.   It was not clear to Plaintiffs' Counsel until late June 2010, at around the time of the June 22 hearing, that Mr. Morales' unavailability may have become permanent.   At the hearing, Plaintiffs' Counsel disclosed to the Court everything they knew regarding Mr. Morales' status.   Soon thereafter, Plaintiffs' Counsel decided, in part based on the Court's observation that he was "AWOL" – to proceed in this case ***without Mr. Morales***.   As Scott Ferrell notes in his declaration, he had no reason to conceal the fact that we had been out of touch with his client, which happens occasionally in consumer class action cases.  (S. Ferrell Decl., ¶ 24).

K.      **On July 8, 2010, Plaintiffs' Counsel Timely Withdrew Their Motion For Preliminary Injunction.**

On or about July 8, 2010, Plaintiffs' Counsel withdrew Plaintiff's Motion for Preliminary Injunction by filing and serving a Notice of Withdrawal.  This was done ***only one day after*** plaintiff Morales was dismissed as a class representative, and a full ***five days before*** the July 13, 2010 deadline for Defendants to oppose the motion. Defendants never had to and never did file any opposition to Plaintiff's Motion for

1    Preliminary Injunction.  Thus, Plaintiffs' Counsel promptly withdrew the Preliminary

2    Injunction Motion and Defendants suffered no harm as a result.  (S. Ferrell Decl., ¶ 25).

3         **L.    Defendants' Most Inflammatory Assertion – That Plaintiffs' Counsel**

4              **Improperly Offered Compensation To Class Representative Bobba**

5              **and Knowingly Asserted False Allegations In The First Amended**

6              **Complaint – Is Completely And Totally False.**

7         After reviewing the internet postings Defendants attached to their motion

8    ("posts"), Plaintiffs promptly confirmed that the posts did come from plaintiff Dan

9    Bobba but that the information contained therein is largely false.

10        First, as set forth in the declaration of Wynn Ferrell, ***no one from the office of***

11   ***Plaintiffs' Counsel ever did anything remotely similar to what the posting says***.  (W.

12   Ferrell Decl., ¶¶ 10-12).

13        Second, objective facts indicate that much of the information contained in the

14   posts was fanciful.  For instance, no attorney from Newport Trial Group had ever met

15   with Mr. Bobba as of the date(s) of the posts; yet, the posts state that "the lawyer comes

16   over twice and has me sign some documents for this suit saying I took it, it doesn't

17   work, and the company is false advertising."  Similarly, the indication that Mr. Bobba's

18   "friend" called him up and said "his girlfriend's brother is a class action lawsuit

19   attorney" is nonsensical because, although Scott Ferrell has two sisters, they are both

20   married with multiple children, devoutly religious, and live out of state.  They know

21   nothing of the details of his practice, know nothing about this case, and neither of them

22   have "boyfriends" or know Mr. Bobba or any of his "friends."  (S. Ferrell Decl., ¶ 27).

23        Third, and perhaps most importantly, Dan Bobba has submitted a sworn

24   declaration in which he describes the posting as false locker room talk between himself

25   and some friends.  (*See* Bobba Decl., ¶ 4, Ex. Q to Scott Ferrell Decl.).  The September

26   5, 2010 Declaration of Dan Bobba sets the record straight as to what Plaintiffs' Counsel

27   told Mr. Bobba, how they conducted themselves, and the largely fictional nature of the

28

1  posts.   Quite simply, Mr. Bobba's September 5 declaration shows that Plaintiffs'
2  Counsel did nothing improper.  (Bobba Decl., ¶¶ 5-8; W. Ferrell Decl., ¶¶ 11-12).

3        **M.**    **Defendants' Contention That Plaintiffs' Counsel Was Unwilling To**
4                  **Put Messrs. Bobba And Rhodes Up For Deposition, And Ultimately**
5                  **Dismissed The Case, To Try To Protect This Supposed Improper**
6                  **Compensation Ring Exposed Is Absurd.**

7        Defendants first requested these depositions on July 29, 2010.  Plaintiffs' Counsel
8  confirmed that Mr. Bobba's deposition would proceed the following week, but
9  indicated (admittedly without a thorough explanation) that Rhodes could not be deposed
10  the following week.[8]  To show the genuine intent of Plaintiffs' Counsel to attend this
11  deposition, Scott Ferrell has attached a few internal Newport Trial Group memoranda
12  which confirm that he was making plans to travel to and defend Mr. Bobba's
13  deposition.  (*See* Exs. T-U, S. Ferrell Decl.).

14         For instance, in an August 22, 2010 email from Scott Ferrell to his office
15  manager (Linda) and personal assistant (Beaudrea), he specifically asked his assistant
16  (Beaudrea) to "[d]etermine whether it would be more efficient for you to drive me to
17  the Bobba deposition in San Raphael on Thursday or for me to fly there and back,
18  inclusive of airports, taxis, etc."  (Ex. T to S. Ferrell Decl.)

19        **N.**    **On August 23, 2010, In An Effort To Avoid Further Expenditure Of**
20                  **Resources, Plaintiffs' Counsel Dismissed This Action Without**
21                  **Prejudice Due To Ongoing Issues With Class Representatives**

22        On or about August 23, 2010, Scott Ferrell learned of certain personal
23  information regarding Mr. Bobba which caused Mr. Ferrell to doubt his viability as a
24  potential class representative.  Given Mr. Rhodes' unavailability (W. Ferrell Decl., ¶ 8)
25  and the concerns regarding Mr. Bobba's viability (W. Ferrell Decl., ¶ 9), Plaintiffs'
26  Counsel decided to promptly dismiss the action without prejudice.  (S. Ferrell Decl., ¶

27  _____
[8] As indicated in Wynn Ferrell's declaration, Plaintiffs' Counsel had by then also lost
28  contact with Mr. Rhodes despite its best efforts to communicate with him.  (W. Ferrell
Decl., ¶ 8).

1    10).  Counsel believed this course was preferable to, for example, trying to maintain the

2    case and while trying to find other viable plaintiffs.

3

4    ## III.   THE   STANDARD   FOR   SANCTIONS   UNDER   SECTION   1927   IS

5    DELIBERATELY HIGH

6         As noted above, Section 1927 is designed to sanction an attorney "who …

7    multiplies the proceedings in any case unreasonably and vexatiously."   With the

8    adverbs being in the conjunctive, sanctions under Section 1927 must be imposed for

9    conduct that is *both* "unreasonable" *and* "vexatious" with a showing of "bad faith,

10   improper motive, or reckless disregard of the duty owed to the court." (*Edwards, supra,*

11   153 F.3d at 246.)  Again, in the Ninth Circuit, the imposition of Section 1927 sanctions

12   requires a finding of bad faith: "We assess an attorney's bad faith under a *subjective*

13   *standard.  Knowing or reckless conduct* meets this standard." (*Pacific Harbor Capital,*

14   *supra,* 210 F.3d at 1118 (9th Cir. 2000) (quoting *MGIC Indemnity Corp., supra,* 952

15   F.2d at 1121-1122 (emphasis added).)

16        Additionally, the courts only award sanctions under Section 1927 when the

17   conduct actually is frivolous, or objectively unreasonable (*see, e.g., NAACP-Special*

18   *Contribution Fund v. Atkins,* 908 F.2d 336, 340 (8th Cir. 1990); *B.K.B. v. Maui Police*

19   *Department,* 276 F.3d 1091, 1107 (9th Cir. 2002) (reckless allegations sanctionable

20   under Section 1927 only if also frivolous or made with knowledge)), unless a

21   nonfrivolous filing or action is made with the *intent to harass*.  (*In re Keegan*

22   *Management Co. Securities Litigation,* 78 F.3d 431, 436 (9th Cir. 1996).)  In this spirit,

23   the First Circuit, in *Rossello-Gonzalez v. Acevedo-Vila,* 483 F.3d 1 (1st Cir. 2007),

24   denied a motion under Section 1927 because, among other things, "[t]here is no

25   allegation, for example, of duplicative motions being filed *or repeated refusals to*

26   *comply with court orders.*" (483 F.3d at 7 (emphasis added).)

27

28

IV.   **THE ACTUAL CONDUCT OF PLAINTIFFS' COUNSEL CANNOT GIVE RISE TO SECTION 1927 SANCTIONS BECAUSE IT WAS BOTH REASONABLE AND NON-VEXATIOUS**

As set forth in exhaustive detail above and in the declarations of Scott Ferrell, Wynn Ferrell, and Dan Bobba, the actual conduct of Plaintiffs' Counsel is very different than the overreaching portrait Defendants have tried to paint.  In reality, based on the complete factual picture, it is clear that the conduct of Plaintiffs' Counsel was reasonable, non-vexatious, and done in good faith.

Indeed, as discussed above and summarized below, Plaintiffs have directly refuted the supposed wrongdoing alleged by Defendants:

| **Defendants' Contention** | **The Truth** |
|---|---|
| Plaintiffs' Counsel filed and improperly maintained this duplicative lawsuit | 1) This Court already ruled this lawsuit – a putative nationwide class action based on the federal RICO statute – is not duplicative (2) Plaintiffs' Counsel's repeated offers to resolve the case or at least consolidate the two lawsuits were repeatedly rebuffed by Defendants |
| Plaintiffs' Counsel "unreasonably and vexatiously multiplied the proceedings before this Court" | (1) Plaintiffs' Counsel's repeated offers to resolve the case were rebuffed by Defendants (2) Plaintiffs' Counsel's repeated offers to consolidate the two lawsuits were repeatedly rebuffed by Defendants, which then caused |

| | |
|---|---|
| | the filing of this action, the motion to transfer venue, and all other related matters |
| | (3)  At the June 22, 2010 hearing, the Court found that the proposal of Plaintiffs' counsel (two weeks leave to amend to try to add plaintiffs) was simpler and more efficient than the dismissal or transfer sought by defense counsel |
| Plaintiffs' Counsel withheld information from the Court regarding Morales' status | (1) Plaintiffs' Counsel candidly informed the Court at the June 22 hearing that Counsel had lost contact with Mr. Morales |
| | (2) Before the hearing Plaintiffs' Counsel had not concluded that Mr. Morales' unavailability was permanent |
| Plaintiffs' Counsel submitted a declaration on June 1, 2010 falsely claiming to have "confirmed" Morales' February 2010 purchase of the product | (1) Plaintiffs Counsel never had any contact with Mr. Morales; his statement that he "confirmed" the purchase was based on internal office communications |
| Plaintiffs' Counsel did not timely withdraw its Motion for Preliminary Injunction | (1) Plaintiffs' Counsel withdrew the Motion for Preliminary Injunction on July 8, 2010 just one day after Morales was dismissed from the case (July 7) |

| | |
|---|---|
| | and five days before any opposition to the motion was due (July 13) <br><br> (2) Defendants never had to and never did file any opposition to the Motion for Preliminary Injunction |
| Plaintiffs' Counsel "[f]alsely represented to the Court that they had been retained by two new clients who had purchased Magna RX+" | (1) Plaintiffs' Counsel informed the Court that they "had been contacted" by two potential plaintiffs <br><br> (2) That was and is a true statement |
| Plaintiffs' Counsel offered compensation to Bobba to purchase Magna Rx and serve as class representatives | (1) Bobba's Declaration confirms his internet postings were joking, false, and that Plaintiffs' Counsel acted appropriately <br><br> (2) The Declarations of Wynn Ferrell and Scott Ferrell confirm this as well |
| Plaintiffs' Counsel dismissed this case to avoid the depositions of plaintiffs Bobba and Rhodes to avoid exposure of the alleged improper compensation ring | (1) Plaintiffs' Counsel decided to dismiss the case because of issues related to the class representatives and to minimize expenditure of resources by the Court, the parties, and their counsel |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

| Plaintiff acted with malicious, vexatious, or bad faith intent | See above and declarations of Scott Ferrell, Wynn Ferrell, and Dan Bobba |
|---|---|

Accordingly, once Defendants' false contentions are pared away, the record shows that Plaintiffs' Counsel acted in good faith and reasonably throughout this litigation.  There is no basis for sanctions under Section 1927 here.  Indeed, it appears that Defendants have overreached in their effort to impugn Plaintiffs' counsel – misstating facts, ignoring prior rulings by this Court, and arguing for sanctions where there is clearly not basis here.

## V.     CONCLUSION

Therefore, based upon the facts and legal authorities discussed herein, Plaintiffs' Counsel respectfully requests that Defendants' motion be denied in its entirety.

Dated:  September 21, 2010                          NEWPORT TRIAL GROUP

                                                     /s/  Scott J. Ferrell
                                                    Scott J. Ferrell
                                                    Attorneys for Plaintiffs and the Class